**John Barry BARTON, Appellant–Respondent,**

v.

**Karen Sue BARTON, Appellee–Petitioner.**

**No. 27A02–9303–CV–123.**

Court of Appeals of Indiana, Second District.

Sept. 20, 1994.

C. Robert Rittman, Kiley, Osborn, Kiley, Harker, Rogers, Michael & Certain, Marion, for appellant.

P. Martin Lake, Marion, for appellee.

SULLIVAN, Judge.

John Barry Barton (Father) appeals the denial of his Verified Petition To Abate Regular Support following the twenty-first birthday of his child, S.B. The sole issue presented for review is whether the trial court erred in failing to order the abatement of Father's support obligation.

We reverse and remand.

Generally, the duty to support a child ceases upon the child's twenty-first birthday. I.C. 31–1–11.5–12(d) (Burns Code Ed.1987 & Supp.1993). However, the "educational needs" component of a support order, if effective before a child reaches twenty-one (21) years of age, may be continued until further order of the court. I.C. 31–1–11.5–12(d)(1); *see also Martin v. Martin* (1986) Ind., 495 N.E.2d 523, 525 (support for educational needs may not be initiated after emancipation or upon attaining age twenty-one, but an existing order for educational needs may be continued). Once the trial court expressly determines that a child support order includes an educational needs component, the court also is "authorized to enforce and consider a modification of said order notwithstanding [the child's] age." *Martin, supra,* 495 N.E.2d at 526. Furthermore, our Supreme Court clarified its *Martin* decision, stating that even if a child has become emancipated for purposes of child support, a court is "authorized to complete consideration of [educational needs] petitions filed *before* emancipation." *Donegan v. Donegan* (1992) Ind., 586 N.E.2d 844, 846 (emphasis in original).

Here, Father petitioned the court to abate support in anticipation of S.B.'s imminent twenty-first birthday. In support of his petition, Father argued that his duty to support S.B. should terminate because the child support order which existed at the time he petitioned for abatement did not *expressly* provide any support for S.B.'s educational needs. *Cf. Martin, supra,* at 525 (specific reference that child "has education needs" adequately expressed the requisite component for continuing child support). Father insists that the existing child support order did not include an "educational needs" component, as identified in *Martin,* sufficient to authorize the continuation and/or modification of an order for educational needs beyond his daughter's twenty-first birthday. In resolving the question herein presented, we must first determine the status of the child support order as it existed when Father petitioned for abatement.

The original order for the support and maintenance of the parties' minor children was entered upon the dissolution of the parties' marriage on April 12, 1984. Although the trial court ordered Father to pay the

parochial school tuition for the remainder of that school year, no mention was made of either party's obligation to pay for tuition at institutions of higher learning.[1] Karen Sue Barton (Mother) subsequently requested a child support modification on April 17, 1990.[2]

On April 25, 1991, the trial court granted Mother's petition and increased Father's weekly obligation to $70.00 for S.B.'s "support and maintenance." Record at 10. In its order, the court stated that S.B. was currently enrolled at Indiana University. However, the court found that neither Father nor Mother had sufficient income or assets to participate financially in the payment of S.B.'s college expenses "above and beyond the order of support herein." Record at 10. Thus, Father remained obligated to provide *support,* but did not incur an additional obligation to assist with S.B.'s educational expenses.

In anticipation of S.B.'s twenty-first birthday, Father initiated the abatement petition on October 16, 1992. Father also stated that he was without sufficient income or assets to contribute to S.B.'s college expenses. At the hearing upon this petition, Mother presented evidence that S.B. was a junior at Indiana University and that S.B. maintained a satisfactory grade point average while pursuing a double major in psychology and criminal law. The cost of attending Indiana University was $8,500 per school year. S.B. was financing her college education through student loans, grants, summer and part-time jobs, and Mother's contribution. S.B. also used Father's support to help defray her educational expenses. Mother asked that the trial court require Father to continue to pay $70.00 per week towards S.B.'s college education in lieu of support.

After taking the matter under advisement, the trial court denied Father's petition to abate support. Instead, the court found that the existing support order of April 25, 1991 "although called 'support', was established on the basis of the parties' comparative gross income to be used to assist [S.B.] in attaining her college degree...." Record at 15. The court further found that "although the language [in the 1991 modification order] of the Court says what it says," the court *intended* that "the financial assistance for [S.B.'s] college education be limited to that amount computed under the Uniform Child Support Guidelines until [S.B.] completed a continuous four (4) year college education, notwithstanding her age." Record at 15–16 (emphasis supplied). What the court "intended" and what the law provides, however, are two entirely different things.

When determining what amount, if any, a parent will pay for the support of a child, the trial court is guided by selective statutory provisions. *See, e.g.,* I.C. 31–1–11.5–12, –12.1, –17, –17.1 (Burns Code Ed. 1987 & Supp.1993). More to the point, in the instant case, it appears that the legislature contemplated a two-tiered analysis concerning what sums appropriately may be ordered for a child's educational needs.

First, a trial court must determine the reasonable amount of support required to furnish the child's basic needs and to maintain the child's general welfare. I.C. 31–1–11.5–12(a). An order for child support is not merely based upon a rudimentary review of the parties' balance sheets. Rather, all relevant factors including, but not limited to, a child's physical or mental condition and his or her educational needs must be considered by the court. *Id.* The trial court must take into account the child's developmental needs *vis a vis* the parents' relative financial resources to meet those needs. Having weighed the pertinent factors, the trial court may then order the amount of support necessary to provide adequately for the child.

Secondly, and after establishing an order for support under I.C. 31–1–11.5–12(a), a trial court may inquire into the appropriateness of including *additional* sums for the child's elementary, secondary, and post-sec-

---

1. According to the divorce decree and settlement agreement, if Father required the children to attend parochial school in the future, then father would be solely and exclusively responsible for the tuition.

2. At this time, Father had been paying $44.00 per week for S.B.'s support and maintenance.

ondary education. I.C. 31–1–11.5–12(b).[3] We characterize an order for this type of educational expense as "additional" because subsection (a) already directed the court to consider the child's educational needs, in a generalized sense, as a threshold determination when ordering child support.[4] At this step of the evaluative process, however, the trial court's inquiry is more searching than previously required.

For example, the child's level of education is at issue. The child's aptitude and ability come into play. Therefore, we must conclude that where a trial court orders a parent to contribute to a child's college expenses, it does so only after making an independent analysis and a determination exclusive of that made pursuant to subsection (a).[5]

■ In the instant case, the record discloses that the April 25, 1991 support modification order required Father to provide only for S.B.'s support and maintenance. Clearly, the trial court would have been authorized to order Father to contribute additional sums for S.B.'s higher educational needs pursuant to subsection (b) under appropriate circumstances. But in its 1991 order, the trial court declined to do so. In fact, the court specifically stated that it was unable to order Father's "financial participation in the payment of [S.B.'s] yearly college expenses *above and beyond* the order of support herein." Record at 10 (emphasis supplied).

In essence, Father argues that the trial court stopped short of exercising its authority to advance to the second level of inquiry contemplated in I.C. 31–1–11.5–12(b). We agree. The legislature delineated child support considerations that are *common* to all children and then provided a mechanism through which the *special* needs of a particular child could be addressed. The two provisions, no matter how interrelated, are simply *not* interchangeable. Nor can a determination pursuant to subsection (a) be transformed into a subsection (b) order for educational needs merely by wishing it so.

Consequently, in the instant case, the child support order which was before the trial court upon Father's petition to abate support did not include additional sums for S.B.'s college expenses. The language of the April 25 order expressly so stated. Thus, it was error for the trial court to deny Father's petition to abate the existing support order.

■ This is not to say that Mother was precluded from requesting that Father contribute to S.B.'s college expenses prior to S.B.'s twenty-first birthday. It appears from the record before us that at the hearing[6]

3. Subsection (b)(1) provides that the child support order may *also* include sums for the child's education. Thus, the statutory language clearly implies that a child may have "educational needs" other than those contemplated in subsection (a).

4. This is also true for *special* medical, hospital, or dental expenses (above and beyond the support required for a child's *general* health and welfare in the prior subsection) once a showing is made that the special expenses are appropriate and are necessary to serve the best interests of the child. I.C. 31–1–11.5–12(b)(2). Similarly, a child support order also may include sums for federally mandated fees (I.C. 31–1–11.5–12(b)(3)) or for basic health and hospitalization insurance coverage (I.C. 31–1–11.5–21.1).

In the instant case, the decree of dissolution spelled out the parents' obligations concerning "reasonable and necessary uninsured cumulative medical, surgical, hospital, dental, optical-ophthalmologic and prescriptive/drug expenses" for the minor children. Supplemental Record at O. In the event that health or hospitalization insurance was procured for the benefit of the children, a written notice identifying the insurer and the number of the policy or group certificate was to be forwarded to the custodial parent.

5. Our conclusion upon this point is buttressed by the fact that the legislature specifically carved out an exception to the general rule that child support ends upon the child's twenty-first birthday. Unless the support order contained provisions for the child's educational needs as *outlined in subsection (b)(1)*, the duty to support terminates. I.C. 31–1–11.5–12(d)(1). *See also Martin, supra,* 495 N.E.2d at 525 (noting that subsection (d) is not limited to those children who are emancipated before reaching age 21).

6. The hearing was held before S.B.'s twenty-first birthday. At this time, Father suggested that even if the court abated his duty of support, S.B. would continue to receive weekly income (presumably) in the form of the payment of Father's support arrearages. The fact that Father previously failed to fulfill his duty of support (and must presently provide restitution) neither excuses *nor* supplants any additional duty to provide for S.B.'s college expenses pursuant to subsection (b).

upon the abatement petition, the trial court acted well within its prerogative in conducting a thorough investigation of S.B.'s current expenses as a full-time college student and her aptitude and ability to complete a four-year degree, as well as the ability of Mother and Father to contribute to S.B.'s higher educational needs. Upon remand, it will be for the trial court to determine whether a timely request for educational expenses was, in fact, before the court at the time of the hearing and whether the criteria for a support order pursuant to subsection (b) were established. *See, e.g., Donegan v. Donegan, supra,* 586 N.E.2d 844 (authorizing trial court to complete consideration of petition filed for educational expenses before emancipation).[7]

The judgment of the trial court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

FRIEDLANDER and HOFFMAN, JJ., concur.

---

**7.** *But see Donegan v. Donegan* (1992) Ind., 605 N.E.2d 132, 134 (upon rehearing) (due to insufficient evidence that emancipation occurred after filing of petition for educational expenses, trial court's order for college expenses contribution must be reversed; but in all other respects leaving its earlier *Donegan* opinion undisturbed).